# IN THE SUPREME COURT OF TEXAS

No. 19-0280

LOUIS HINOJOS, PETITIONER,

v.

STATE FARM LLOYDS AND RAUL PULIDO, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

**Argued September 17, 2020**

JUSTICE BLAND delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE LEHRMANN, JUSTICE BOYD, JUSTICE DEVINE, JUSTICE BUSBY, and JUSTICE HUDDLE joined.

JUSTICE GUZMAN filed a dissenting opinion.

JUSTICE BLACKLOCK filed a dissenting opinion, in which JUSTICE GUZMAN joined.

The Texas Prompt Payment of Claims Act, codified in Insurance Code Chapter 542, imposes deadlines on insurers to pay valid claims.[1] If an insurer fails to comply with Chapter 542, then it is liable for statutory interest on the amount of the claim and attorney's fees.[2] The insurer in this case accepted a homeowner's claim and paid part of it before the statutory deadline.

Dissatisfied with that amount, the homeowner sued, seeking full payment of the claim plus interest and attorney's fees under Chapter 542. While suit was pending—and after the statutory

---

[1] TEX. INS. CODE §§ 542.057–.058; *see Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812 (Tex. 2019).

[2] TEX. INS. CODE § 542.060.

deadline for payment had passed—the insurer invoked the policy's appraisal process. The appraisers awarded the homeowner substantially more than the amount the insurer had paid.

The insurer paid the difference and then moved for summary judgment on the homeowner's Chapter 542 claim, contending that its payment of the appraisal award precluded liability. Without the benefit of our decisions in *Barbara Technologies Corp. v. State Farm Lloyds*[3] and *Alvarez v. State Farm Lloyds*,[4] the trial court granted summary judgment, and the court of appeals affirmed.[5] We granted the homeowner's petition for review.

Applying *Barbara Technologies* and *Alvarez*, we hold that payment of an appraisal award does not absolve the insurer of statutory liability when an insurer accepts a claim but pays only part of the amount it owes within the statutory deadline. Because the insurer in this case did not pay the amount that "must be paid"[6] on the claim before the statutory deadline, it was not entitled to summary judgment. Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court.

## I

Chapter 542, subchapter B, imposes liability when an insurance company misses a statutory payment deadline for a documented claim that it owes under an insurance policy.[7] In the statute, the Legislature instructs that the subchapter's provisions be "liberally construed to promote the prompt payment of insurance claims."[8]

---

[3] 589 S.W.3d 806 (Tex. 2019).

[4] 601 S.W.3d 781 (Tex. 2020).

[5] 569 S.W.3d 304, 313 (Tex. App.—El Paso 2019).

[6] TEX. INS. CODE § 542.051(2)(B).

[7] *Id.* § 542.060; *see Barbara Techs.*, 589 S.W.3d at 812–13.

[8] TEX. INS. CODE § 542.054.

When an insurer receives a claim, it has fifteen days to acknowledge its receipt, begin an investigation, and request from the claimant all "items, statements, and forms" that the insurer reasonably believes are necessary to evaluate the claim.[9] Within a further fifteen business days of receiving the "items, statements, and forms," the insurer must inform the claimant, in writing, whether it accepts or rejects the claim.[10] If an insurer accepts the claim, in whole or in part, it has five business days to pay the insured.[11] To enforce these deadlines, Chapter 542 provides that a claimant may recover statutory interest and attorney's fees, in addition to the amount of the claim, when an insurer violates the statute:

> if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.[12]

Section 542.060(a), in turn, sets out that interest accrues at 18% per year and assesses attorney's fees against a liable insurer:

> if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy . . . , in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees.[13]

This case stems from a dispute over State Farm Lloyds' liability for statutory damages under section 542.060(a).

---

[9] *Id.* § 542.055(a).

[10] *Id.* § 542.056(a).

[11] *Id.* § 542.057(a).

[12] *Id.* § 542.058(a).

[13] *Id.* § 542.060(a).

## II

After a summer wind and hail storm in 2013, Louis Hinojos reported a claim to State Farm for damage to his home. A State Farm adjuster inspected the home on June 12, nine days after Hinojos reported the claim. The adjuster valued the damage at $755.02, an amount below Hinojos's policy deductible. On June 20, State Farm informed Hinojos that, because the value of the claim was below his policy's deductible, State Farm owed nothing on the claim. Hinojos requested a second inspection. At the second inspection, the adjuster identified additional damage. On August 7, State Farm sent Hinojos a letter agreeing that there was "covered damage" in the amount of $3,859.22. The letter enclosed payment of $1,995.11, reflecting State Farm's assessment of the value of the claim, less the deductible and depreciation.

Hinojos sued State Farm and its adjuster the following February.[14] Among other claims, Hinojos alleged that State Farm had violated Chapter 542 by delaying payment on the claim.[15]

Nearly two years after Hinojos submitted his claim, and fifteen months after he filed suit, State Farm invoked the policy's appraisal clause. The appraisal process results in a binding determination of the amount owed for a covered loss under the policy:

> If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent disinterested appraiser. . . . The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. . . .

---

[14] Hinojos filed the operative First Amended Petition in April. We refer to State Farm and its adjuster, Raul Pulido, collectively as "State Farm."

[15] Hinojos alleged: "State Farm's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are actionable by TEX. INS. CODE §542.060. . . . State Farm's delay of the payment of Plaintiff's claims following State Farm's receipt of all items, statements, and forms reasonably requested and required, for longer than the amount of time provided . . . constitutes a non-prompt payment of the claims. TEX. INS. CODE §542.058."

The appraisers valued Hinojos's loss at $38,269.95 on a replacement cost basis and $26,259.86 on an actual cash basis. Within a week of the appraisers' decision, and about two-and-a-half years after Hinojos submitted his claim, State Farm tendered an additional $22,974.75, reflecting payment of the appraisal award net of the earlier payment it made to Hinojos, the deductible, and depreciation.

Following the appraisal, State Farm moved for summary judgment, contending that "timely tendering of the appraisal award precludes prompt payment damages under Chapter 542 of the Texas Insurance Code." Hinojos responded that State Farm was subject to statutory liability because it had "failed to issue any payment within the deadlines provided by section 542.057."[16] In the alternative, Hinojos argued that, even if State Farm's first payment was timely, State Farm is liable for statutory interest on the difference between the appraisal award and the partial payment "for the period August 7, 2013 to the present." The trial court granted summary judgment.

Hinojos appealed, contending that "the payment of the appraisal award should allow him to receive interest penalties under the statute because the appraisal payment was ultimately paid outside the sixty-day statutory-window."[17] The court of appeals rejected this reasoning and affirmed. It concluded that "because State Farm made a reasonable payment on Hinojos's claim within the sixty-day statutory limit," State Farm had not violated Chapter 542.[18]

Hinojos petitioned for review. He argues that "[w]hile State Farm paid part of the claim 'not later than the fifth business day after the notice was made,' it did not pay the rest of the claim within the statutory time frame." In response, State Farm asserts that it "undisputedly paid

---

[16] *See* TEX. INS. CODE § 542.057(a) ("[I]f an insurer notifies a claimant . . . that the insurer will pay a claim or part of a claim, the insurer shall pay the claim not later than the fifth business day after the date notice is made.").

[17] 569 S.W.3d 304, 312 (Tex. App.—El Paso 2019).

[18] *Id.* at 313. The court of appeals referred to section 542.058(a) of the Texas Insurance Code as a potential basis for a statutory violation. *Id.* at 312–13.

5

Hinojos's claim within 60 days after receiving all information required to evaluate the claim," notwithstanding the fact that it later paid more on that claim after the appraisal. We granted review.

### III

The parties agree on the key facts: (1) State Farm "accepted" Hinojos's claim and paid some money toward that claim within the statutory window; and (2) State Farm fully paid the amount it owed to satisfy the claim after the deadline had passed.[19] The issue presented is whether State Farm can avoid liability under Chapter 542 as a matter of law based on these facts.

After the court of appeals in this case ruled, we decided *Barbara Technologies Corp. v. State Farm Lloyds*.[20] In that case, State Farm rejected a claim because it valued the property damage below the policy's deductible.[21] State Farm later paid the claimant an appraisal award.[22] We held that the payment of an appraisal award does not foreclose prompt payment damages when an insurer rejects an insurance claim.[23] An appraisal payment, we concluded, "is neither an acknowledgment of liability nor a determination of liability under the policy for purposes of TPPCA damages under section 542.060"[24] and "has no bearing on any deadlines."[25] Thus, "[n]othing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was

---

[19] In the parties' briefing, including in the courts below, some ambiguity exists as to which statutory deadline State Farm's post-appraisal payment failed to meet. *Compare* TEX. INS. CODE § 542.057(a), *with id.* § 542.058(a). That discrepancy does not affect our analysis, and we do not address it here.

[20] 589 S.W.3d 806 (Tex. 2019).

[21] *Id.* at 809, 813.

[22] *Id.* at 810.

[23] *Id.* at 809, 817–19. *Barbara Technologies* addressed "whether an insured party can prevail on its claim for damages for delayed payment pursuant to the [Act] . . . when it is undisputed that the insurer investigated the claim, rejected it, invoked the policy's provision for an appraisal process, and ultimately paid the insured in full in accordance with the appraisal." *Id.* at 809.

[24] *Id.* at 820.

[25] *Id.* at 817–18.

liable under the terms of the policy but delayed payment beyond the applicable statutory deadline, regardless of use of the appraisal process."[26]

We followed *Barbara Technologies* with *Alvarez v. State Farm Lloyds*.[27] There, in contrast to *Barbara Technologies*, State Farm accepted the claim.[28] The facts in *Alvarez* parallel those here: State Farm initially assessed the claim to be worth less than the homeowner's deductible; the homeowner objected; State Farm revised its assessment and paid an amount toward the claim; appraisers eventually determined that State Farm owed more on the claim than it had paid; and State Farm paid the appraisal amount.[29] We reversed summary judgment for State Farm, holding that the later payment of the appraisal award did not bar Chapter 542 liability.[30]

Our holdings in *Barbara Technologies* and *Alvarez* apply in this case.[31] State Farm does not dispute that it is "liable under the terms of the policy" or that it fully satisfied the claim only after the statutory deadline had passed. As we stated in our earlier decisions, State Farm's payment of the appraisal award outside the statutory deadline does not relieve it of Chapter 542 liability.

The court of appeals in this case added that State Farm was also entitled to summary judgment because Chapter 542 requires only "a reasonable payment" within the sixty-day statutory

---

[26] *Id.* at 819; *see Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 135 (Tex. 2019) ("As we hold today in *Barbara Technologies*, an insurer's payment of an appraisal award does not as a matter of law bar an insured's claims under the Prompt Payment Act.").

[27] 601 S.W.3d 781 (Tex. 2020) (per curiam).

[28] *Id.* at 782.

[29] *Id.*

[30] *Id.* at 783 ("The court of appeals concluded that Alvarez could not maintain his TPPCA claim due to State Farm's payment of the appraisal award. Under *Barbara Technologies* and *Ortiz*, this was error."). The disposition in *Alvarez* demonstrates that the Court in *Barbara Technologies* did not endorse *Breshears v. State Farm Lloyds*, 155 S.W.3d 340 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied), in the respects that JUSTICE BLACKLOCK suggests. *Post* at __ (citing *Barbara Techs.*, 589 S.W.3d at 821–22).

[31] Contrary to the suggestion that the issue was not before the Court, in its brief in *Alvarez*, State Farm raised arguments concerning "whether the insurer's partial payment of a claim before the deadline precludes liability under the Act." *Post* at __.

7

limit, not full payment.[32] State Farm adopts that position in this Court. Its new position is similarly unavailing. The Legislature defines "claim" as:

> a first party claim that:
>
> (A) is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract; and
>
> (B) must be paid by the insurer directly to the insured or beneficiary.[33]

Nothing in Chapter 542 discharges prompt payment liability based on the partial payment of the amount that "must be paid" under the policy.[34] Otherwise, an insurer could pay a nominal amount toward a valid claim to avoid the prompt payment deadline that the Legislature has imposed. We rejected such a contention in *Republic Underwriters Insurance Co. v. Mex-Tex, Inc.*, holding in that case that an insurer owes interest on the amount of the claim it did not promptly pay when it makes a partial payment.[35] The phrase "must be paid by the insurer" in the definition of "claim" includes the amount of the claim and "limits 'claim' to the amount ultimately determined to be owed, which of course would be net of any partial payments made prior to that determination."[36] We explained that "[t]his encourages insurers to pay the undisputed portion of a claim early,

---

[32] 569 S.W.3d 304, 313 (Tex. App.—El Paso 2019). The court of appeals adopted this interpretation from *Breshears*.

[33] TEX. INS. CODE § 542.051(2).

[34] State Farm's reliance on the Fifth Circuit's decision in *Mainali Corp. v. Covington Specialty Insurance Co.*, 872 F.3d 255 (5th Cir. 2017), is misplaced. State Farm incorrectly understands the case as holding that "reasonable" partial payments within the deadline establish compliance with Chapter 542. *See id.* at 259. Instead, the Fifth Circuit held in *Mainali* that an insurer did not violate Chapter 542 when the insurer timely paid *more* than the amount the appraisers determined it owed under its policies. *Id.* at 257. The appraisers found that the insurance company owed a lower overall amount but allocated the amount differently across the insured's various coverages; the insurer then paid an additional amount "out of an abundance of caution." *Id.* at 257, 259. Because the insurer in that case paid more than the total amount it owed pursuant to the appraisal, the Fifth Circuit rejected a claim under Chapter 542. Here, in contrast, State Farm paid significantly less within the statutory deadline than the amount the appraisers ultimately determined that it owed on the claim.

[35] 150 S.W.3d 423, 426–28 (Tex. 2004) (interpreting the definition of "claim" in Chapter 542's substantively similar predecessor statute).

[36] *Id.* at 426; *see* TEX. INS. CODE § 542.051(2) (defining "claim").

consistent with the statute's purpose 'to obtain prompt payment of claims made pursuant to policies of insurance.'"[37]

In urging that we depart from *Mex-Tex* in this case, JUSTICE BLACKLOCK distinguishes between the statutory definition of "claim" and the amount ultimately owed under the policy, contending that "claim" is the amount that State Farm agreed to pay, not the amount it owed. Chapter 542, however, expressly defines "claim" to include the amount that "must be paid by the insurer," not the amount the insurer agrees to pay.[38] Chapter 542's definition of claim, in the context of sections 542.058 and 542.060, comprises both liability for the loss *and* the amount owed for that loss. The amount "that must be paid" may not be established until after an insurer's investigation (or an appraisal), but it does not make the statute's use of the word "claim" inconsistent. While an insured's demand constitutes a claim on the policy for the full amount of the loss, the statute provides deadlines for finalizing that amount. Removing the amount that "must be paid" from the statutory definition, as the dissenting Justices would do, fails to cohere with Chapter 542's primary remedy, which is "interest on the *amount* of the claim" that was not promptly paid.[39]

Finally, although the statute provides that an insurer may "notif[y] a claimant . . . that the insurer will pay . . . part of a claim,"[40] it does not authorize partial payment of an accepted claim—

---

[37] *Mex-Tex*, 150 S.W.3d at 426; *see also id.* at 427–28 ("We conclude that from November 4, 1999, 75 days after [the insurer] tendered Mex-Tex partial payment of $145,460, to the date of judgment, Mex-Tex was entitled to the statutory penalty only on the $33,540 difference between the tendered payment and the amount of Mex-Tex's claim."). Our recent decision in *Alvarez* further undercuts State Farm's argument. There, like here, State Farm made a partial payment on the claim within the deadline, and we held that statutory liability was not precluded. *Alvarez v. State Farm Lloyds*, 601 S.W.3d 781, 782–83 (Tex. 2020).

[38] TEX. INS. CODE § 542.051(2). The dissenting Justices would have us read "must be paid by the insurer" out of the definition of "claim." However, we must "read statutes contextually to give effect to every word, clause, and sentence because every word or phrase is presumed to have been intentionally used with a meaning and a purpose." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018) (citation omitted).

[39] TEX. INS. CODE § 542.060(a) (emphasis added).

[40] *Id.* § 542.057(a).

JUSTICE BLACKLOCK conflates a partial acceptance with a partial payment when the statute expressly separates the two.[41] Chapter 542 does not provide that a partial payment of a valid claim discharges liability for statutory interest. Accordingly, we hold that an insurer's acceptance and partial payment of the claim within the statutory deadline does not preclude liability for interest on amounts owed but unpaid when the statutory deadline expires.

Our holding accords with our past decisions in *Mex-Tex*, *Barbara Technologies*, and *Alvarez*, as well as the statute's stated purpose of "promot[ing] the prompt payment of insurance claims."[42] By requiring insurers to promptly satisfy claims that they owe in their entirety, the Legislature incentivizes insurers to resolve disputes and invoke the appraisal process sooner rather than later. Although the statute says nothing about reasonableness, a reasonable payment should roughly correspond to the amount owed on the claim. When it does not, a partial payment mitigates the damage resulting from a Chapter 542 violation. Interest accrues only on the unpaid portion of a claim.[43]

A significant delay in requesting an appraisal, as in this case, may cause additional interest to accrue. Although "[a]ccess to the appraisal process to resolve disputes is an important tool in

---

[41] *Compare id.* ("[I]f an insurer notifies a claimant . . . that the insurer will pay a *claim or part of a claim*, the insurer shall pay the claim not later than the fifth business day after the date notice is made." (emphasis added)), *with id.* § 542.060(a) ("[I]f an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy . . . , in addition to the *amount of the claim*, interest on the *amount of the claim* at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees." (emphasis added)). "When the Legislature uses a word or phrase in one part of a statute but excludes it from another, the term should not be implied where it has been excluded." *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 329 (Tex. 2017).

[42] TEX. INS. CODE § 542.054. JUSTICE BLACKLOCK offers that "statutory claims are available against insurers who make low offers in bad faith." *Post* at __. His position ignores that the remedy for insurers' bad-faith acts is actual damages, TEX. INS. CODE § 541.151, which payment of an appraisal award, however delayed, negates. *See Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 129 (Tex. 2019) (holding that the insurer's payment of an appraisal award "bars the insured's common law and statutory bad faith claims to the extent the only actual damages sought are lost policy benefits"); *Biasatti v. GuideOne Nat'l Ins. Co.*, 601 S.W.3d 792, 794 (Tex. 2020) (per curiam) ("[W]e held in *Ortiz v. State Farm Lloyds* that payment of an appraisal award forecloses an insurer's liability for breach of contract and common-law and statutory bad faith unless the insured suffered an independent injury.").

[43] *See Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 426 (Tex. 2004).

the insurance claim context," it is the insurer's responsibility to seek prompt resolution of a disputed claim through appraisal to avoid statutory interest on amounts that were not promptly paid.[44]

\*   \*   \*

This appeal from a summary judgment in State Farm's favor does not address Hinojos's affirmative claim for relief under Chapter 542. To prevail on his claim, Hinojos must establish: (1) the amount for which State Farm is contractually liable under the insurance policy;[45] (2) that State Farm failed to comply with statutory deadlines; and (3) statutory damages based on the amount contractually owed less the amounts paid within the statutory deadline. We reverse the judgment of the court of appeals and remand the case to the trial court for proceedings consistent with this opinion.

_____
Jane N. Bland
Justice

**OPINION DELIVERED:** March 19, 2021

---

[44] *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814 (Tex. 2019).

[45] In *Barbara Technologies*, we noted that the appraisal amount may bind the parties as to the amount of the loss, even though it does not establish liability. *Id.* at 822 n.12 (opining that if an insurer is adjudicated liable, the insurer owes "the amount of the claim, as fixed by the binding appraisal"); *see also id.* at 823 n.14 ("An appraisal is binding only as to the amount of the loss on the claim, not as to liability.").

11